## PEAKE v. CITY OF NEW ORLEANS.

### (Circuit Court of Appeals, Fifth Circuit. December 19, 1893.)

#### No. 161.

1. MUNICIPAL CORPORATIONS—DRAINAGE—CONSTRUCTION OF STATUTE.

In the Louisiana statute transferring all drainage property in New Orleans from the drainage commissioners to the city itself, the provision of section 9 that "all property, not money, so received, shall be held in trust for the payment of said Mississippi and Mexican Gulf Ship Canal Company, and ultimately for the benefit of New Orleans, should the same not be required for the work of drainage," means that the property is to be held for drainage purposes as long as it is required therefor; and in the mean time it cannot be subjected to the canal company's debts. 56 Fed. 376, affirmed.

2. SAME.

The concluding words, "work of drainage," as used in section 9, are not restricted to the property required for the work of drainage under the system of drainage contemplated by that act, so as to leave all property not in accordance with that system to be held in trust for payment of the debts of the canal company.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This was a bill in equity filed by the city of New Orleans against J. W. Gurley, receiver of the drainage fund of the city, to compel

a reconveyance to it of square No. 467, and the drainage machine situated thereon. The receiver had been appointed by the circuit court of the United States for the eastern district of Louisiana in the suit of James W. Peake, a creditor of the drainage fund, against the city of New Orleans. There was a decree requiring the receiver to make the conveyance prayed, (56 Fed. 376;) and he having refused to take an appeal, although requested by said Peake to do so, the latter himself took an appeal to this court.

Charles Louque and Richard De Gray, for appellant.

E. A. O'Sullivan and Henry Renshaw, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge. By the act of March 18, 1858, of the state of Louisiana, enacted for the purposes of draining and reclaiming swamp lands in the parishes of Orleans and Jefferson, there were organized three boards of commissioners,—one for each drainage district,—who were invested with all the rights and powers necessary to drain their several districts, by entering upon lands, and erecting engines and machinery, and digging canals and drains, and making embankments and levees; and by making plans and advertisements, and making proof before one of the district courts, they were authorized to levy assessments upon the land so drained. In 1859 a supplementary act authorized the board of commissioners to issue 30-year bonds, and use the proceeds for carrying on the work of drainage, and provided for their payment; and on March 1, 1861, another act provided for the collection of the assessments for the payment of the interest on such bonds and the principal as they matured. While these acts were in force, and constituted the entire law regarding the drainage of New Orleans and the surrounding country, the president of the board of commissioners for the second drainage district purchased, with money collected as drainage taxes and held as drainage funds, a certain lot of land, known as "Square No. 467," and erected thereon, at the cost of $57,671.38, paid out of money of such fund, a drainage machine, since known as the "Dublin Draining Machine," which has since that time been continuously operated for the drainage of a large part of the property situated in that part of New Orleans. Subsequent to the purchase of this land and the erection of this draining machine, the drainage of New Orleans was provided for by an act of the legislature of February 14, 1871, authorizing and empowering the Mississippi & Mexican Gulf Ship Canal Company to enter upon the construction of such a system of drainage by canals, embankments, levees, pumps, and drainage machines, as was specified in the act, and should be further designated by the board of administrators of the city of New Orleans. This city was also made the successor of the boards of drainage commissioners provided for by the acts of 1858, and it was provided that said boards should transfer to its board of administration all money, assessments, claims of drainage, real estate, books, plans,

and other property, that they held as such, and it was further provided:

"That all money or moneys received by the said board of administrators from the said commissioners of the drainage districts, either from the sale of property received from said commissions, from the collection of claims for drainage now due, from the collection of drainage assessments, and from any of the sources of revenue contemplated by the provisions of this section of this act, be placed to the credit of the Mississippi and Mexican Gulf Ship Canal Company, and held as a fund to be applied only to the drainage of New Orleans and Carrollton, in accordance with the provisions of this act; and that all property, not money, so received, shall be held in trust for the payment of said Mississippi and Mexican Gulf Ship Canal Company, and ultimately for the benefit of New Orleans, should the same not be required for the work of drainage."

Subsequently, by Act No. 16 of February 24, 1876, the city of New Orleans assumed exclusive control of all drainage works in the drainage districts. There being outstanding at that time a large number of drainage warrants, a portion of which were owned by the appellant herein, he brought suit against that city as trustee holding the property of the drainage funds for the payments of such debts. A judgment being obtained in his favor, a receiver was appointed, to whom was conveyed, by the mayor of New Orleans, a large number of lots of land, the property of that fund, among which was the square in question,—No. 467,—upon which had been erected the Dublin draining machine, (see 2 C. C. A. 626, 52 Fed. 74; 38 Fed. 779,) whereupon the city of New Orleans filed its bill of complaint, alleging that said square of land was public property, and had been dedicated to the public use, and was inalienable, and praying that the deed therefor be erased and canceled, and declared null and void. Upon a hearing in the court below the prayer of the bill was granted, and it was ordered that the receiver reconvey to the city of New Orleans, as public property, said square of land. From that judgment an appeal has been taken.

This square of land came to the city through the effect of Act No. 30 of 1871. It was purchased with public money collected for a public purpose, and if it could in any way be treated as held in trust, or liable to be disposed of for any other purpose, it must be by the provisions of that act. Appellant claims that a portion of the ninth section of said act, wherein it provides "that all property, not money, so received, shall be held in trust for the payment of said Mississippi and Mexican Gulf Ship Canal Company, and ultimately for the benefit of New Orleans, should the same not be required for the work of drainage," devotes all such property to such trust, and that the final clause, "should the same not be required for the work of drainage," only modifies that immediately preceding, "and ultimately for the benefit of New Orleans." We cannot accept this view of the case. Not only does the form of the expression, but the history, object, and intent of the legislation, appear to prohibit such construction. The entire drainage scheme was for the benefit of New Orleans, through the use of money and property that was applied to it, and the suggestion or declaration that the payments for the labor and services of the canal company would ultimately

produce such result and such benefit would seem reasonable; but to place such a construction upon the language as would declare that that which was not required for the work of drainage should ultimately be for the benefit of New Orleans more than that which was so required produces an absurdity. This final clause is a limiting and restrictive one, and must limit either the property which is to be held in trust, or that which shall ultimately be for the benefit of New Orleans. There is every reason why such restriction should be placed upon the class of property so held in trust, but no reason why all of such payments might not result ultimately to the benefit of New Orleans. Such construction as is claimed by the appellant would undo all the benefits which had resulted from the system. If the property which was required for the work of drainage was to be held in trust for the payment of the debts of the corporation, it would be placing the city at the mercy of the creditors of the company, in a manner which we cannot consider the legislature intended. This is a limitation,—a negative and modifying clause used finally,—and we can but believe it was intended to limit the property which was to be held in trust, and the paragraph was to be construed as a parenthesis inclosed by commas, which might be replaced by curved lines, and read, "All property, not money, so received, shall be held in trust for the payment of said Mississippi and Mexican Gulf Ship Canal Company (and ultimately for the benefit of New Orleans) should the same not be required for the work of drainage."

It is also contended by appellant that the "work of drainage" mentioned in said ninth section should be held only to apply to those works and appliances which were contemplated by the act of 1871, and that all the property and appliances not in accordance with that system of drainage should be held in trust for the payment of such debts of the Mississippi & Mexican Gulf Ship Canal Company as might be incurred. It is true that large amounts of warrants were issued and debts incurred, but we cannot appreciate the force of the argument that while the works erected by the said company after its entering upon its contract were protected from any lien or the effect of any trust, if they were required for drainage purposes, yet the property which had been purchased and rendered valuable, and was used for the work of drainage, prior to its connection with the drainage system, and was still so required, was subject to such lien, nor can we accept such construction of the act. The evidence shows conclusively that this square is especially required for the work of drainage; that for nearly 25 years the value of a large portion of the city has depended upon it; that "without it considerable of the property back of St. Charles Avenue would not be habitable." Several witnesses testify in most positive language of the disastrous results which would follow the suspension of its work. We consider that this was no portion of the property which was declared to be held in trust for the payment of the canal company, and hence is, as claimed, dedicated to public uses, and inalienable; and the judgment below is affirmed, with costs, and it is so ordered.